# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRENDA GANHEART** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-9703** |
| **XAVIER UNIVERSITY OF LOUISIANA, ET AL** | **SECTION "S" (3)**<br>**28 USC § 636(c)** |

## ORDER AND REASONS

This case is before the undersigned Magistrate Judge pursuant to the parties' 28 U.S.C. §636(c) consent.[1]  Before the Court is a Motion for Summary Judgment [Doc. # 37] seeking dismissal of plaintiff's employment discrimination lawsuit in its entirety, which motion was filed on behalf of the defendants, Xavier University of Louisiana and its employees, Dr. Norman Francis (President of Xavier), Larry Calvin (Director of Human Resources), Robert Skinner (Library Director), Gennice W. King (Associate Director), Adrienne Webber (Assistant Director), Elizabeth Barron (Vice President of Academic Affairs)  and Wayne T. Harris (Dean of the College of Pharmacy).  Pro se Plaintiff, Brenda Ganheart, failed to file any memorandum in opposition or other documents controverting the aforesaid motion but did appear at the oral hearing on December 10, 2008 and was permitted to address the Court and to state why she believed that the motion should be denied.  Following the hearing the undersigned Magistrate Judge took the matter under advisement.

The thrust of Defendants' Motion for Summary Judgment follows:

Plaintiff's employment discrimination claims based upon race, sex, religion, color and retaliation should be dismissed because:

---

[1]*See* Consent to Proceed before a United States Magistrate Judge [Rec. Doc. No. 39].

(1) Ganheart's claims under Title VII, Title IX, 42 U.S.C. § 1983, 29 U.S.C. §206(d) and all of her state law claims are time-barred;

(2) Plaintiff completely failed to administratively exhaust her Title VII religion and color discrimination claims and failed to timely exhaust her Title VII race and gender discrimination claims;

(3) Plaintiff cannot prove a prima facie case of discrimination or retaliation or rebut defendants' stated legitimate non-discriminatory purpose; and

(4) Title VII does not provide a cause of action against co-employees/supervisory personnel in their individual capacity.

Additionally, defendants contend that:

(5) Because Title VII provides the exclusive remedy for individuals alleging employment discrimination against a federally funded educational institution, plaintiff's Title IX claim must fail;

(6) Plaintiff cannot prove a prima facie case under 42 U.S.C. § 1983 and therefore her due process, freedom of movement and free speech claims fail;

(7) Plaintiff cannot prove a prima facie case under the Equal Pay Act, 29 U.S.C. §206(d); and

(8) Plaintiff's defamation claim and claims under Louisiana's "Whistleblower" and "Electronic Surveillance" statutes fail because Ganheart lacks the requisite proof of essential elements of the aforesaid claims.

As stated at the outset plaintiff did not file any response to the defendant's motion.

However, Ganheart did appear at the scheduled hearing and argued conclusorily that Xavier discriminated against her and treated others more favorably without further specification. Plaintiff did not address the defendant's contentions regarding prescription, failure to state a claim or the complete failure of proof regarding essential elements of her claims, *inter alia*.

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

## I. UNDISPUTED FACTS[2]

Plaintiff, Brenda Ganheart ("Ganheart") began her employment with Xavier on March 25, 1996, as a part-time Library Technician in Xavier's College of Pharmacy.[3] Ganheart's salary as a part-time employee in the College of Pharmacy library was underwritten by the Department of Health and Human Services Centers of Excellence grant, which provided funding to and was administered by Xavier's College of Pharmacy. In 1999, the College of Pharmacy Library and Main University Library merged.[4] As a result of such merger, it was determined that the College of Pharmacy could no longer support certain library staff under the grant because those funds

---

[2]*See* Xavier University's Statement of Undisputed Facts [Rec. Doc. No. 37-11] filed pursuant to Local Rule 56.1 is adopted by reference and incorporated as if reiterated *in extenso*. Local Rule 56.2 provides: "Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2. This Court's review of summary judgment record reveals that the *material* facts set forth in defendant's statement are uncontroverted and they are, in any event, deemed admitted since the plaintiff has failed to controvert same as required by Local Rule 56.2. Even considering plaintiff's argument at the time of the hearing in open court which consisted of a few conclusory general statements unsupported by specific facts, plaintiff fails to establish any *material* facts which are disputed with competent summary judgment evidence.

[3]Plaintiff's Deposition at p. 69/Doc. 37-3 [Defendants' Exhibit "I"/Doc. 37-3].

[4]*See* Plaintiff's Deposition at p. 76.

3

received in connection with the grant had to be used for College of Pharmacy operations. Certain library positions previously funded by the College of Pharmacy with funds received in connection with the grant, including Ganheart's part-time position, were eliminated.

As a result of the merger of the College of Pharmacy Library and Xavier's main library, the College of Pharmacy decreased the funding requested in its COE grant application from 2.5 FTE "full time equivalency" to 1.5 FTE for the grant period of 2000-2001. In its 2003 grant renewal application, the College of Pharmacy did not request any funding for its library because the library merger was both physical and budgetary, except for one position – *i.e.*, the Reference Outreach Librarian position.

When it became apparent to the Dean of the College of Pharmacy, Dr. Wayne Harris, that plaintiff's part-time position was no longer directly serving the College of Pharmacy, he could no longer certify continued funding of the position with COE grant proceeds.[5] Thereafter and consistent with the March 31, 2005 letter notifying Ganheart that her position was eliminated and that payment of her salary would end on June 30, 2005,[6] a personnel action form was completed indicating that the reason for plaintiff's termination was "expiration of grant."[7] Plaintiff was not replaced; her part-time position in the College of Pharmacy Library which had been funded by COE grant proceeds was eliminated.

---

[5]*See* Affidavit of Dr. Wayne T. Harris, Dean of the College of Pharmacy [Defendants' Exhibit "II'/Doc. 37-4]

[6]*See* University Librarian Robert E. Skinner's Letter to Brenda Ganheart dated March 31, 2005 (notifying plaintiff that her employment with Xavier will cease on June 30, 2005 because funding for the College of Pharmacy's COE grant ended) [Defendants' Exhibit "IV"/Doc. 37-6].

[7]Human Resources Manager Larry Calvin's Affidavit and Attached Personnel Action Forms [Defendants' Exhibit "V"/Doc. 37-7].

A number of other former College of Pharmacy Library employees, whose positions were funded in part by COE grant proceeds, were similarly affected by the merger and its effect upon COE grant funded positions which formerly supported the Library. Kirsten McCaskill, a full-time library assistant, received the same letter that the plaintiff was issued, informing McCaskill that she would also be terminated effective June 30, 2005. Like the plaintiff's personnel action form, McCaskill's similarly indicated "expiration of grant" as the reason for her termination.

Fred Reed ("Reed"), a Full-Time Systems Technician, was also affected by the library merger and the resulting change in the flow of COE grant proceeds formerly available to fund certain College of Pharmacy Library positions. Prior to 2005, Reed's position was funded by both Library and COE funds. In January of 2006, Reed accepted a position with the University Library as Library Technology Coordinator – *i.e.*, a position not funded by COE grant proceeds.

As early as February 2, 2005, Dr. Harris indicated on an effort certification form that Adrienne Webber's salary was not properly funded because her position as Outreach Librarian was funded with COE grant proceeds. At that time, Webber's salary was redistributed to the University, as opposed to being funded with COE proceeds. Her position changed from Outreach Librarian, a position which had been funded with COE grant proceeds, to Assistant Director/Access Services, a position which was budgeted within the Main University Library.

While employed by Xavier, Ganheart received benefits in accordance with the University's policy. When plaintiff worked at least 20 hours a week, she was afforded health benefits and vacation/sick leave and allowed to participate in the TIAA-CREF retirement plan offered by her employer. As per Xavier's policy, only employees who worked 20 hours per week or more are entitled to benefits. Plaintiff was offered an opportunity to adjust her hours

during the break between 2004 fall and 2005 spring semesters in order to maintain the requisite 20 hours per week.[8]

Although plaintiff alleges that "she was continually subjected to a pattern and practice of discrimination with regard to her race (Afro-American), color (brown-complexioned), sex (female), religion (Baptist), reprisal and equal pay violations,"[9] plaintiff admittedly never filed a a formal grievance with the University.[10]  With respect to equal pay, plaintiff testified that she did raise the equal pay issue with Larry Calvin, the Human Resource Director, "probably in 2003."[11]  By equal pay issues, Ganheart testified that she was referring to the fact that her schedule as a part-time employee was being adjusted so as to preclude her access to benefits, whereas Joseph Turner, a full-time employee, was allowed to work continuously during the break between semesters so that he could maintain his benefits.[12]  Plaintiff further testified that, other than her discussions with Larry Calvin during the period of 2002/2003, this equal pay issue came up one other time in the summer of 2005.  Most notably, it is undisputed that (1)Joseph Turner was a full time employee of Xavier University at all pertinent times;[13] (2) at no time

---

[8]*See* Human Resources Manager Larry Calvin's Affidavit and Attached Documentation regarding Brenda Ganheart's Receipt of Employee Benefits [Defendants' Exhibit "V"/Doc. 37-7]; *see also* Affidavit of Gennice King, Memorandum from Gennice King, Library Associate Director dated August 23, 2000 to Brenda Ganheart regarding her part-time schedule and benefits, and Memorandum Gennice King, Library Associate Director dated August 23, 2000 to Joseph Turner regarding his full-time schedule [Defendants' Exhibit VIII/Doc. 37-10].

[9]Plaintiff's Complaint [Doc. #1].

[10]*See* Plaintiff's Deposition at p. 118.

[11]*See* Plaintiff's Deposition at p. 118.

[12]*Id.* at pp. 118, 178.

[13]*See* Plaintiff's Deposition at p. 108.

relevant to this litigation was Joseph Turner paid a higher hourly wage than Ganheart;[14] (3) plaintiff was formally notified on March 31, 2005 that her position was being eliminated effective June 30, 2005, when her pay would be terminated and her employment by Xavier would cease because of lack of grant funding;[15] and (4) plaintiff was offered additional working hours in 2004 but declined to work them.[16]

Turning to plaintiff's defamation claim, it is undisputed that plaintiff learned of the existence of the allegedly defamatory memoranda contained in Xavier's personnel file in May of 2005. Ganheart admittedly saw the aforesaid memoranda in Xavier's personnel file and did <u>not</u> get said memoranda from a third party.[17]

Plaintiff did not file a charge of discrimination with the EEOC until August 30, 2006,[18] well more than 300 days after March 31, 2005, the date upon which Ganheart was notified in writing that her employment would cease on June 30, 2005. Indeed, the date upon which plaintiff's first and only EEOC Charge was filed (August 30, 2006) is more than 400 days after June 30, 2005 – *i.e.*, the date upon which Ganheart's employment with Xavier actually ceased.

The summary judgment record does reflect that: (1) Ganheart sent a letter to the Equal Opportunity Commission's ("EEOC") District Office in Atlanta, Georgia on April 24, 2006; (2)

---

[14]*See* Human Resources Manager Larry Calvin's Affidavit and Attached Personnel Action Forms regarding Brenda Ganheart, Kirsten McCaskill, Fred Reed and Adrienne Webber [Defendants' Exhibit "V"/Doc. 37-7].

[15]*Id.* at pp. 181-182.

[16]*Id.* at p. 181.

[17]*See* Plaintiff's Deposition at p. 199 [Defendants' Exhibit "I"/Doc.37-3].

[18]*See* Brenda Ganheart's EEOC Charge of Discrimination No. 461-2006-00925 received August 30, 2006 [Defendants' Exh. "VII"/Doc. #37-9].

on May 3, 2006, the EEOC's Atlanta District Office responded informing Ganheart that Xavier

falls within the geographical area of the EEOC's New Orleans Field Office and that her letter

had been forwarded to that office for processing; and (3) that the EEOC's New Orleans Field

Office had sent her a Charge Intake Questionnaire to complete and return.[19]  Nevertheless, four

(4) more months elapsed before August 30, 2006, when Ganheart actually filed her first and only

formal EEOC Charge of Discrimination against her former employer, Xavier.[20]

On September 19, 2007, plaintiff received the EEOC's Dismissal of Charge and Notice

of Rights to Sue.  On December 19, 2007 plaintiff filed a motion to appoint counsel in the United

States District Court in the Eastern District of Louisiana.  Although tendered to the Court for

filing on December 19, 2007, plaintiff's complaint in the captioned matter was not actually filed

until January 2, 2008 when her application to proceed in forma pauperis was granted.  On

February 21, 2008, plaintiff filed an amended complaint more specifically referring to Title VII

and Title IX and also adding claims of sexual harassment, defamation, free speech, freedom of

movement and due process violations, as well as claims under Louisiana's Whistle Blower

Statute.

### III. SUMMARY JUDGMENT STANDARD

The principal purpose of Fed. R. Civ. P. 56 is to "isolate and dispose" of factually

unsupported claims.[21]   Summary judgment is proper where "the pleadings, depositions, answers

---

[19]*See* EEOC Atlanta District Office Letter to Brenda Ganheart dated May 3, 2006
(referencing plaintiff's letter dated April 24, 2006) [Defendants' Exhibit "VI"].

[20]*See* Brenda Ganheart's EEOC Charge of Discrimination No. 461-2006-00925 received
August 30, 2006 [Defendants' Exh. "VII"/Doc. #37-9]; Plaintiff's Deposition at pp. 128-131
[Defendants' Exhibit "I"/Doc. 37-3].

[21]*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact...."[22]   There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.[23]

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[24]   A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.[25] "In such a situation, there can be 'no genuine issue of material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[26]

The Court has no duty to search the record for triable issues.[27]  Mere assertions of a factual dispute unsupported by probative *evidence* will not prevent summary judgment.[28] Conclusory statements, speculation and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary

---

[22]Fed. R. Civ. P. 56(c).

[23]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[24]*Celotex*, 477 U.S. at 323.

[25]*Nebraska v. Wyoming,* 507 U.S. 584, 590 (1993); *Celotex,* 477 U.S. at 323; *Wenner v. Texas Lottery Commission,* 123 F.3d 321, 324 (5th Cir.), *cert. denied,* 523 U.S. 1073 (1998).

[26]*Celotex,* 477 U.S. at 322-23.

[27]*Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[28]*Celotex,* 477 U.S. at 248-50;  *Abbot v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir. 1993).

judgment.[29]  "Summary judgment is appropriate in any case 'where critical evidence is so weak

or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"[30]

## IV. ANALYSIS

### A.  Title VII: Time-Bar and Failure to Exhaust Administrative Remedies

As a prerequisite to filing a Title VII claim in federal court, the complainant must: (1)

timely file suit as required by Title VII and (2) have first exhausted his administrative

remedies.[31] Failure to meet these requirements bars the plaintiff from later pursuing his claims

before the EEOC or in federal court.[32]

A Title VII plaintiff must file a charge of discrimination with the EEOC no more than 180

days after the alleged discriminatory employment activity occurred.[33]   However, in "deferral

states," this period is extended to 300 days if the complainant has instituted a complaint with a

state or local agency with authority to grant or seek relief with respect to such practices.

Louisiana is a deferral state; therefore, the 300 day filing period applies.[34]  The time to file a

---

[29]*Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996).

[30]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075-76 (5th Cir. 1994) (*citing  Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir. 1993)); *see also Read v. BT Alex Brown*, 2003 WL 21754966 * 2 (5th Cir.), *cert. denied*, 2004 WL 323271 (U.S. February 23, 2004).

[31]*Tolbert v. U.S.*, 916 F.2d 245, 247-48 (5th Cir.1990)( *per curiam* ); *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir.1994).

[32]*See Aronzon v. Southwest Airlines*, 2004 WL 57079 (E. D. La. Jan.9, 2004) (Vance, J.) (Because there was no evidence that plaintiff filed a charge with the EEOC or an appropriate state agency, plaintiff failed to exhaust his administrative remedies and his claims were time-barred from later pursuing such remedies before the EEOC or in federal court).

[33]42 U.S.C. § 2000e-5(e)(1).

[34]LSA-R.S. § 23:303; *Mayes v. Office Depot, Inc.*, 292 F. Supp. 2d 878, 888 (W. D. La.2003).

claim for discrimination with the EEOC "begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred."[35] Once the clock begins to run, the complainant has 300 days to file a charge of discrimination with the EEOC.[36] The complainant then has 90 days from the issuance of a Right-to-Sue Letter by the EEOC to file suit.[37]

It is undisputed that plaintiff's first and only EEOC Charge filed against Xavier is Charge No. 461-2006-00925 which was filed on August 30, 2006. Plaintiff is required to timely exhaust her administrative remedies, prior to pursuing a claim in federal court. Exhaustion of administrative remedies includes a timely filed charge of discrimination with the EEOC and receipt of a Notice of Right to Sue.

The statute of limitations begins to run when the aggrieved party is informed of the discriminatory act or decision. In this case, the statute of limitations began to run from the date upon which Ganheart was notified of the adverse employment decision, *i.e.*, on March 31, 2005 when she was informed that she would be paid through June 30, 2005, her position would be eliminated effective that day and her employment would cease. It is undisputed that the last date upon which any adverse act or adverse employment decision could have possibly occurred is June 30, 2005, the date upon which Ganheart's employment with Xavier terminated.

All of plaintiff's Title VII claims are time-barred. This Court has taken into account the eighty-nine (89) day period from August 29, 2005 through November 25, 2005, during which

---

[35]*Id.* (*quoting Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir.1998))

[36]*Id.* (*citing Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir.2001).

[37]*Mayer v. Southeast Battery*, 2001 WL 1352321 at *1 (E.D.La. Nov.1, 2001).

time frame prescription was suspended[38] by the effect of several executive orders issued by

Louisiana Governor Kathleen Blanco.[39] Even calculating the time period from June 30, 2005

and giving plaintiff the benefit of the 89 day period during which prescription was suspended,

well over 300 days elapsed before August 30, 2006, when plaintiff filed her first and only EEOC

charge against Xavier University.

This Court recognizes that La.Rev.Stat. Ann. § 9:5824 provides in pertinent part as

follows:

> B. (1) Notwithstanding the provisions of R.S. 9:5822 or 5823, a party who is
> domiciled within the parishes of Cameron, Orleans, Plaquemines, St. Bernard,

---

[38]After Hurricanes Katrina and Rita impacted the State of Louisiana, Governor Kathleen Babineaux Blanco issued three Executive Orders suspending the limitations period applicable in this case. *See* Note 39 *infra*. These orders were later ratified by the Louisiana Legislature. *Id.* The effect of these Executive Orders, read together, was to suspend prescriptive periods between August 29, 2005 and November 25, 2005. *See Mitchell v. Kaiser Aluminum & Chemical Corp.,* 942 So.2d 1093 (La.App. 5th Cir.2006).

[39]Louisiana Governer Kathleen Blanco's post-Hurricane Katrina Executive Orders Nos. KBB-2005-32, KBB 2005-48, and KBB 2005-67. See Executive Orders attached hereto or http:// www.gov.state.la.us ; La.Rev.Stat. Ann. § 9:5821 (which provides in pertinent part that "[t]he action of the governor of this state in issuing Executive Orders KBB 2005-32, 48, and 67 is hereby approved, ratified, and confirmed subject to the provisions of R.S. 9:5822 through 5825."). In No. KBB-2005-32, the Governor, in recognizing the state of emergency caused by Hurricanes Katrina and Rita, declared the following: "All deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts, administrative agencies, and boards are hereby suspended until at least September 25, 2005, including, but not limited to, any such deadlines set for in the following: A. Louisiana Civil Code; B. Louisiana Code of Civil Procedure; C. La. R .S. Title 9, Civil Code Ancillaries; D. La. R.S. Title 13, Courts and Judicial Procedure; E. La. R.S. Title 23, Chapter 10, Worker's Compensation; F. La. R.S. Title 40, Chapter 5 Part XXI-A, Malpractice Liability for State Services; and G. La. R.S. Title 40, Chapter 5, Part XXIII, Medical Malpractice ... SECTION 2: This Order is effective upon signature and shall apply retroactively from Monday, August 29, 2005, through Sunday, September 25, 2005, unless amended, modified, terminated, or rescinded by the governor, or terminated by operation of law prior to such time." Thereafter, in Executive Order No. KBB 2005-48, the Governor amended the previous order to suspend these deadlines until "at least October 25, 200." Finally, in Executive Order No. KBB 2005-67, the Governor extended the suspension of deadlines "until November 25, 2005."

Jefferson, or Vermilion, or whose cause of action arose within such parishes or whose attorney is domiciled within or has a law office within such parishes, may seek in any court of competent jurisdiction in this state a limited suspension and/or extension of prescription or peremption periods or other legal deadlines, beyond the termination dates provided in R.S. 9:5822 and 5823, by contradictory motion or declaratory judgment. The party seeking an additional suspension and/or extension, in accordance with the provisions of this Section, shall bear the burden of proving by a preponderance of the evidence that the motion was filed at the earliest time practicable and but for the catastrophic effects of Hurricane Katrina or Rita, the legal deadline would have been timely met. If the court grants the motion, the prescription or peremptive period or other legal deadline shall be suspended or extended for a period not to exceed thirty days from the date of the granting of the motion. This limited suspension or extension shall terminate on June 1, 2006, and any right, claim, or action which would have expired during the time period of January 4, 2006, through May 31, 2006, shall lapse on June 1, 2006. (2) The failure to file the motion authorized in Paragraph (1) of this Subsection shall not preclude a party from using the basis of the motion as a defense to an exception of prescription.

L.R.S. § 9:5824 B.   Nevertheless, plaintiff has failed to justify a suspension of prescription greater than the 89 days discussed above.  There is no evidence in the entirety of the summary judgment record indicating that the plaintiff was either imprisoned or mentally or physically infirm or otherwise incapacitated so as to justify such a lengthy delay.  Moreover, there is no competent summary judgment evidence, considering the entirety of the record, of any "pattern or practice" or "continuing violations" which could have prevented plaintiff from timely filing her EEOC charge.  This Court's review reveals only conclusory allegations in that vein.  All of Ganheart's arguably actionable claims relate to singular adverse employment decisions or adverse events as opposed to ongoing violations, all of which occurred on or before March 31, 2005 – *i.e.*, when plaintiff was notified in writing by Xavier that her employment would cease on June 30, 2005.

In addition, plaintiff completely failed to exhaust her discrimination claims on the basis

of "color-brown" and "religion-Baptist." Plaintiff's one and only EEOC charge specifically complains of discrimination based upon her (1) race,Black, (2) gender,female and (3) other - unequal pay. Plaintiff had the opportunity to check the boxes indicating she was unlawfully discriminated against on the bases of her religion and color, but failed to do so. In addition to unequal pay and race and gender discrimination, the only other complaint set forth in plaintiff's EEOC charge is one for retaliation.[40] Ganheart explained that Xavier retaliated against her because she "continuously complained about [her] situation." *See* Plaintiff's EEOC Charge No. 461-2006-00925 dated 8/16/06 [Defendant's Exhibit VII]. Plaintiff's post-EEOC Charge Dismissal correspondence dated September 28, 2007 addressed to the EEOC admits her failure to exhaust any discrimination claims based on religion or color, both of which were clearly contrived after the fact.[41]

Plaintiff further fails to state a claim under Title VII against the individual defendant-employees of Xavier University named in her complaint. Title VII creates a cause of action against an employer.[42] Ganheart apparently recognized that fact when she filed her only EEOC Charge, naming Xavier University of Louisiana as the alleged offending employer and no other

---

[40]*See* Plaintiff's Deposition at p. 177.

[41]*See* Brenda Ganheart's Post-EEOC Charge Dismissal Letter to the EEOC Office Re Charge #461-2006-00925 dated September 28, 2007 (stating at page 1: "I'm requesting that the basis include religion (relating to Robert Skinner's requirement of repentent) and color (relating to the promotion of Phyllis Calvin as Pharmacy Science Collection Manager/Stack Supervisor)"). *See* Plaintiff's Complaint and Attachments [Doc. #1-2].

[42]*See Grant v. Lone Star Co*., 21 F.3d 649, 651 (5th Cir. 1994) (refusing to stretch the liability of individual employees beyond the *respondeat superior* principle intended by Congress and concluding that Title VII does not permit the imposition of liability upon individuals unless they meet Title VII's definition of "employer"), *cert. denied*, 513 U.S. 1015 (1994).

person.[43]

## B. 42 U.S.C. §1983: Time-Bar and Failure to State a Claim

To the extent that plaintiff's claims are based on 42 U.S.C. § 1983 alleging the violation of her civil rights, this federal law does not contain its own prescriptive period and, as such, federal courts apply the state law of prescription governing an analogous cause of action as if it were it brought under state law.[44]  A lawsuit, such as plaintiff's alleging a deprivation of rights under federal law, is most similar to a general tort and, therefore, Louisiana's one-year prescriptive period for general torts applies.[45]  Plaintiff's §1983 claims accrued from the date she knew or had reason to know of the injury which serves as the basis of her claim.[46]

In the case at bar, at the absolute latest, the plaintiff's § 1983 claim accrued on the date she was terminated (June 30, 2005).[47]  It is undisputed that plaintiff filed a motion to appoint counsel on December 19, 2007 and the Court filed her complaint thereafter, once the determination of pauper status was made.  December 19, 2007 is well beyond the one year statute of limitations period applicable to §1983 claims.

While the defendants did not discuss the effect of suspension of prescription, it is well-

---

[43]*See* Plaintiff's EEOC Charge No. 461-2006-00925 filed August 30, 2006 [Defendants' Exhibit "VII"/Doc. 37-9].

[44]*Board of Regents of the University of the State of New York v. Tomanio,* 446 U.S. 478, 483 (1980).

[45]La. Civ. Code Art. 3492; *Jacobsen v. Osborne,* 133 F.3d 315, 319 (5th Cir. 1998); Defendants' Motion for Summary Judgment at p. 14 [Doc. #37-2].

[46]*See Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir. 1994).

[47]*See* Plaintiff's Complaint; Plaintiff's EEOC Charge (noting that the latest date as June 30, 2008 – the date of the termination of her employment).

settled that federal courts look to the state's statutes on suspension or tolling of prescription applicable to a § 1983 claim.[48]  This Court's determination that all of plaintiff § 1983 claims are time-barred is cognizant of the eighty-nine (89) day period during which prescription was suspended.[49]  No further suspension of prescription is warranted in the case at bar.

In addition to prescription, plaintiff fails to state a cause of action under 42 U.S.C. § 1983.  Plaintiff's complaint fails to allege any state action.  Defendant in this matter is the Xavier University, a private Catholic institution.  Courts have consistently found that private universities are not state actors.[50]  Because plaintiff fails to allege any state action, Ganheart fails to state a claim under Section 1983.  Having failed to allege and prove the necessary state action,

---

[48] *See Board of Regents*, 446 U.S. at 485 ("Any period of limitation...is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action." ); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463-64 (1975) ( "In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.").

[49] In addition to the Louisiana Governor's Executive Orders discussed above, another recognized and coinciding suspension of prescription issued via order of former Chief Judge Berrigan.  On September 1, 2005, Chief Judge Helen G. Berrigan of the United States District Court for the Eastern District of Louisiana, signed an order suspending "... all deadlines and delays, including liberative prescription and peremptive periods in cases pending or to be filed in this Court ..."  This suspension was terminated on November 25, 2005, except for good cause shown.  Thus, under the standing order of this Court, Ganheart was also entitled to suspension of the one-year deadline from September 1, 2005 through November 25, 2005, under the aforesaid standing order.

[50] *See, e.g., Allen v. Tulane Univ.*, 1993 WL 459949, at * 2 (E. D. La.) (noting that courts have quite consistently found no state action based on various degrees of governmental involvement in universities ranging from federal and state grants, student loan guarantees, tax exemptions, licensing of university owned television and radio stations, etc., and citing cases); *see also Blouin v. Loyola Univ*., 506 F.2d 20, 22 (concluding that Loyola University was not a state actor); *Jones v.. MacInnes*, 1997 WL 795696, at *2 (E. D. La.) (dismissing student's 42 U.S.C. § 1983  claims against Tulane University, a private university, due to lack of requisite state action).

Ganheart's claims of deprivation of her constitutional right to freedom of speech, freedom of movement and denial of due process necessarily fail.

## C. Title IX: Time-Bar and Failure to State a Claim

In *Lakoski v. James*,[51] the Fifth Circuit held that "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions."[52] The court further noted that other circuits have agreed that Title VII's comprehensive remedial scheme precludes § 1983 suits based upon violations of Title VII's rights. The court found compelling evidence that Title IX prohibits the same employment practices proscribed by Title VII and held that "individuals seeking money damages for employment discrimination on the basis of sex in federally funded educational institutions may not assert Title IX either directly or derivatively through § 1983."[53]

## D. Equal Pay Act: Time Bar and Failure of Proof of Essential Elements of Claim

The Equal Pay Act, 29 U.S.C. §206(d), proscribes discrimination between employees on the basis of sex by paying wages to employees at a rate less than the rate paid to employees of the opposite sex for equal work on jobs which require equal skill, effort and responsibility, and which are performed under similar working conditions. 29 U.S.C. § 206(d). Plaintiff has failed to establish a *prima facie* case of discrimination under the Equal Pay Act.

As set forth in the undisputed facts, plaintiff's allegations are that she was not given additional hours to work as another male employee, Joseph Turner, was. There is a complete

---

[51]66 F.3d 751 (5th Cir. 1995), *cert. denied*, 519 U.S. 947 (1996), *reh'g denied*, 519 U.S. 1035 (1996)

[52]*Id.* at 753.

[53]*Id.* at 757.

absence of proof that the "skill, effort and responsibility" required in the performance of plaintiff's part-time job are substantially equal to that of the male comparator, Mr. Turner, who was at all pertinent times a full-time employee.[54]  Additionally, there is a complete absence of any competent summary judgment evidence tending to show that plaintiff was paid less than any similarly situated male employee.   Moreover, it is undisputed that both Turner and Ganheart were paid at the same rate.   The Equal Pay Act does not guarantee a part-time employee, such as Ganheart, the right to work a set number of hours.

In any event, plaintiff's Equal Pay Act claim is time-barred, since plaintiff failed to bring her claim within two years of the alleged discrimination, which can only be characterized as non-willful in this case.  The defendant aptly points out that the last date upon which there could have been any violation was June 30, 2005 and it is undisputed that plaintiff filed this lawsuit on December 19, 2007, which is well more than two years even considering the eighty-nine (89) day suspension of prescription.

### E. Defamation: Failure of Proof as to Essential Elements including Publication

Under Louisiana law, a defamation claim has five essential elements: (1) defamatory words; (2) publication (communication to someone other than the person defamed); (3) falsity; (4) malice, actual or implied; and (5) injury.[55]  As a general rule, defamation  "constitutes an

---

[54]*See Chance v. Rice University,* 984 F.2d 151, 153 (5th Cir. 1993) (noting that, to establish a prima facie case under the Equal Pay Act, the plaintiff must show that her employer is subject to the Act, that she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions and that *she was paid less than the employee of the opposite sex providing the basis of comparison*).

[55]*See Juneau v. Avoyelles Parish Police Jury,* 482 So.2d 1022, 1026 (La.Ct.App.3d Cir.1986)(*citing Cangelosi v. Schwegmann Brothers Giant Super Markets*, 390 So.2d 196 (La.1980)).

individual tort that does not give rise to solidary liability."[56]  An exception to this general rule has developed "when an employee makes a slanderous statement within the course and scope of his employment."[57]   Under such circumstances, "the employer is solidarily liable."[58]

Ganheart has failed to demonstrate the existence of a genuine issue of material fact regarding essential elements of her defamation claim.  There is no proof of a defamatory *publication* and, consequently, no proof of injury arising therefrom.  Indeed, the allegedly offending memoranda remained in Ganheart's personnel file and were not published.

Summary judgment is warranted because plaintiff has failed to factually support essential elements of her claim for defamation.  In addition, any such claim is prescribed. Plaintiff admittedly learned that the allegedly "defamatory memoranda" were in Xavier's personnel file in May of 2005, when she reviewed the file.[59]  Plaintiff failed to bring the tort claim of defamation within one year as required by Article 3492.

### F. State Law Retaliation Claims: Time-Bar

Plaintiff's complaint as amended asserts instances of allegedly retaliatory treatment by Xavier, all of which occurred more than one year before her complaint was filed in this Court on December 19, 2007.  The defendants correctly argue that any state law cause of action based on

---

[56]*Manale v. City of New Orleans, Dept. of Police*, 673 F.2d 122, 126 (5th Cir.1982) (citations omitted).

[57] *Id.* (citations omitted); *Melancon v. Hyatt Corp.*, 589 So.2d 1186 (La.Ct.App.4th Cir.1991).

[58]*Id.*

[59]Ganheart Deposition at p. 199.

the alleged occurrences are time-barred.[60]

Claims based on violation of the Louisiana Whistleblower Statute prescribe one year from the date when plaintiff knew of the violation.[61] Thus, all of plaintiff's retaliation claims are time-barred and Xavier is entitled to summary judgment on all of these prescribed claims as a matter of law.

In addition, the Louisiana Whistleblower Statute applies only to violations of state law and does not apply to violations of federal law. Ganheart contends that Xavier wrongfully terminated her in violation of La. Rev. Stat. § 23:967 (Louisiana Whistleblower Statute). Defendants argue that plaintiff cannot produce evidence to establish an essential element of this claim. Xavier's argument is well founded.

"The Whistleblower Statute provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices."[62] The statute provides, in relevant part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> ....

---

[60]*See Langley v. Pinkerton's Inc.,* 220 F. Supp. 575, 581 (M. D. La. 2002) (noting that the one-year prescriptive period is not suspended during administrative review).

[61]*Diaz v. Superior Energy Services, LLC,* 2008 WL 3077071 (E. D. La. Aug. 4, 2008) (Wilkonson, M.J.); *Lesikar v. Frymaster,* L.L.C., No. 04-0786, 2005 WL 3359178, at *3 n. 4 (W. D. La. Dec. 8, 2005) (Walter, J.); *Johnson v. Harrah's Entertainment, Inc.,* No. 04-331, 2005 WL 3541139, at *5 (E. D. La. Nov. 16, 2005) (Knowles, M.J.); *Langley v. Pinkerton's Inc.,* 220 F. Supp. 2d 575, 581 (M. D. La.2002) (Parker, J.); *Nolan v. Jefferson Parish Hosp.,* 790 So.2d 725, 733 (La. App. 5th Cir. 2001).

[62]*Accardo v. Louisiana Health Servs. & Indem. Co.,* 943 So.2d 381, 383 (La. App. 1st Cir. 2006).

(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La.Rev.Stat. § 23:967.

To survive summary judgment on his whistleblower claim, Ganheart must establish that (1) her employer violated the law through a prohibited workplace act or practice; (2) she advised her employer of the violation; (3) she then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) she was fired as a result of her refusal to participate in the unlawful practice or threat to disclose the practice. Failure to put forth evidence to satisfy any of these elements must result in a summary judgment in favor of the employer.[63]

Ganheart has not carried her burden under Fed. R. Civ. P. 56(c) to produce evidence that demonstrates a genuine issue of material fact as to any of the elements of her whistleblower claim. As to the first prong of the test, it is not sufficient "that the employee reasonably believes [the employer's action] is a violation of law.... [The statute] requires an employee to prove an actual violation of state law in order to prevail on the merits of the case."[64] Louisiana's Whistleblower Statute covers only violations of state law and does not apply to violations of federal law.[65] There is nothing in the summary judgment record that indicates that Ganheart was terminated because of her refusal to participate in an unlawful practice or her threat to disclose such a practice. Indeed, as is shown more particularly below, plaintiff has failed to state a claim

---

[63]*Hale v. Touro Infirmary,* 886 So.2d 1210, 1216 (La. App. 4th Cir. 2004).

[64]*Accardo*, 943 So.2d at 386-87 (quotation and citation omitted) (emphasis added); *accord Beard v. Seacoast Elec., Inc.*, 951 So.2d 1168, 1170 (La. App. 4th Cir.), *writ denied*, 955 So.2d 686 (La.2007); *Price v. B & B Transp. Servs., Inc.*, No.2006 CA 1482, 2007 WL 1300932, at *2 (La. App. 1 st Cir. 2007); *Fondren v. Greater New Orleans Expressway Comm'n*, 871 So.2d 688, 691 (La. App. 5th Cir. 2004).

[65]*Beard*, 951 So.2d at 1170.

under La. R. S. § 15:1303, because the statute applies only to wire or oral communications and not to non-aural communications. Plaintiff's speculative and conclusory allegations are insufficient to establish retaliation for whistleblower activity under Louisiana law.

## G. Failure to State a Claim under La. R. S. § 15:1303

Defendant argues that plaintiff fails to state a claim under Louisiana's Electronic Surveillance Act, La. Rev. Stat. 15:1303. The Louisiana Electronic Surveillance Act makes it unlawful for any person to "[w]illfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire or oral communication." La. Rev. Stat. § 15:1303(A)(1). Louisiana's Electronic Surveillance Act, unlike the Federal Wiretap Act, prohibits only the interception of "wire or oral communications"-it does not address the interception of "electronic communications." La. Rev. Stat. Ann. § 15:1303(A)(1).[66] The Louisiana Legislature included the term "electronic communications" in the statute several times-and even defined it-but did not expressly prohibit the interception of such communications in all circumstances. *See, e.g.,* La.Rev.Stat. Ann. § 15:1302(7)(a) (defining "electronic communication"). Rather, the Legislature expressly limited the scope of the statutory prohibition to the interception of "oral or wire" communications. La. Rev. Stat. § 15:1303(A)(1).

Wire and oral communications communication are statutorily defined as follows:

(3) "Aural transfer" means a transfer containing the human voice at any point between and including the point of origin and the point of reception.
* * *
(11) "Intercept" means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.
* * *

---

[66]*See Becker v. Toca,* 2008 WL 4443050 (E. D. La. 2008) (Fallon, J.).

22

(14) "Oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication.

* * *

(18) "Wire communication" or "communication by wire" means any aural transfer made in whole or in part through the use of facilities used for the transmission of communications by aid of wire, cable, or other like connection between the points of origin and reception, including the use of such connection in a switching station, furnished or operated by any person licensed to engage in providing or operating such facilities for the transmission of communications and such term includes any electronic storage of such communication, and such term includes the radio portion of a cordless, portable, or cellular telephone communication that is transmitted between the cordless, portable, or cellular handset and the base or transmitting tower or unit.

La. Rev. Stat. 15:1302

In the instant case, Ganheart does not allege that the defendants intercepted oral or wire communications. Plaintiff's allegations of wrongdoing regarding L.R.S. 15:1303 are that: "A newly acquired printer, which was placed in plaintiff's work area, automatically and continuously stored print jobs which were subsequently spontaneously reprinted. The printer's memory could not be cleared through the implementation of standard or routine applications as indicated in the printer's operational manual." Plaintiff's Complaint at ¶ 5 [Doc. #1]. Plaintiff does not allege the interception of any oral or aural communication. The statute does not apply to interception of non-aural wire communication. As a matter of law, plaintiff has failed to state a claim under the Louisiana Electronic Surveillance Act and, as a result, said claim cannot form the predicate state law violation for a claim under Louisiana's Whistleblower Act, as discussed above.

### H. Title VII: Hostile Work Environment, Discrimination, Retaliation

To prove that she was unlawfully subjected to a hostile work environment, Ganheart

must adduce evidence of the following elements of this claim, to wit:   (1) she belongs to a protected class;  (2) she was subject to unwelcome harassment;  (3) the harassment was *based on* her protected class status (sex, race, color, and/or religion); and (4) the harassment affected a term, condition or privilege of employment.[67]

The plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable.[68]  The fact-finder must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance.[69]  To hold a defendant liable for a  hostile work environment, the conduct must be so severe or pervasive as to alter the terms or conditions of plaintiff's employment and create an abusive working environment.[70]

Having reviewed the summary judgment record, the alleged conduct was neither *severe* nor *pervasive* within the meaning of the applicable law.  Additionally, there is not so much as a hint of any connection with the *unlawfully* discriminatory motive of either sex, race, color or religion.[71]  Title VII is not a code of general civility in the workplace.  There is not one iota of proof that any alleged workplace harassment was based upon any *unlawfully* discriminatory motive.

---

[67]*See  Frank v. Xerox Corp.,* 347 F.3d 130, 138 (5th Cir.2003).

[68]*Id.* (*citing Harris v. Forklift Sys., Inc*., 510 U.S. 17 (1993)).

[69]*Id. (citing Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir.2000)).

[70]*See Frank,* 347 F.3d at 138 (noting the record reflects no evidence of severe or pervasive harassment).

[71]*See Travis v. Potter,*  2005 WL 2429397, *4 (W. D. La., 2005)

24

"As the Fifth Circuit has noted, the issue at stake in an employment discrimination case is not whether the employer's decision was the correct decision or a fair decision or the best decision; rather, the issue is whether the employer had a discriminatory motive."[72]  The summary judgment record is bereft of any proof that any illegitimate criterion (race, sex, color or religion) actually motivated Xavier University's decisions, including the Dean's decision to eliminate her part-time position in March of 2005.

In the final analysis, Ganheart's subjective perception of discriminatory motive is all that remains.  It has long been the law of the Fifth Circuit that an employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief.[73]  Where, as here, the employee fails to adduce evidence refuting a rational, non-discriminatory reason articulated by the employer, pretext cannot be established by the subjective belief that an illegitimate criterion (sex, race, color or religion) motivated the employer's decision.[74]

Suffice it to say, "discrimination suits still require evidence of discrimination."[75]  Looking at the summary judgment record as a whole, aside from the plaintiff's own subjective belief, the Court concludes that the plaintiff has failed to advance a *scintilla of evidence* to support an inference of intentional *gender*, *race, color or religious* discrimination.

---

[72]*Weathersby v. Saks,* 1999 WL 148441 * 2 (E. D. La.) (McNamara, J.) (*citing Deines v. Tex. Dept. of Protection and Regulatory Services*, 164 F.3d 279, 282-82 (5th Cir. 1999)).

[73]*See Lawrence,* 163 F.3d at 313 (noting that "a subjective belief of discrimination, however genuine, may not be the basis of judicial relief").

[74]*See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995), *cert. denied*, 516 U.S. 1047 (1996).

[75]*Rubinstein v. Administrators of Tulane Educational Fund,* 218 F.3d 392, 400 (5th Cir. 2000).

Concomitantly, evidence of severe or pervasive workplace harassment based upon any of the aforesaid unlawful criteria is similarly absent.

The Court now turns to defendant's contention that the plaintiff cannot prevail on her claim of Title VII retaliation. A charge of retaliation follows the *McDonnell Douglas* burden-shifting analysis and thus plaintiff must establish a *prima facie* case by demonstrating that (1) she engaged in activity protected by Title VII ; (2) an adverse employment action occurred; and (3) a causal link existed between participation in the protected activity and the adverse employment action.[76]

Once the plaintiff establishes her *prima facie* case, the defendant has the burden of production to articulate a legitimate nondiscriminatory reason for the adverse employment action. If the defendant meets this burden, the ultimate question becomes whether "'but for' the protected activity, the [adverse employment action] would not have occurred, notwithstanding the other reasons advanced by the defendant."[77] The requirement of showing "but for" causation is more stringent than the minimal causation required to make the plaintiff's *prima facie* case.[78]

In addition to defendant's contention regarding prescription, plaintiff has failed to adduce evidence that her *protected* activity motivated any adverse employment decisions at issue. Under Title VII, an employee has engaged in protected activity if she has (1) "opposed any practice

---

[76]*See Webb v. Cardiothoracic Surgery Associates of North Texas, P.A.*, 139 F.3d 532, 540 (5th Cir.1998).

[77]*Vadie v. Mississippi State University*, 218 F.3d 365, 374 (5th Cir.2000) (*quoting McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983), *cert. denied*, 531 U.S. 1113 (2001)).

[78]*Hall v. Pitney Bowes, Inc.*, 2004 WL 389093, at *10 (N. D. Tex., Feb.27, 2004).

26

made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or *hearing under this subchapter*."[79]   Here, the participation clause is not implicated at all.  More particularly, it is undisputed that, with respect to the incidents in question, there was no charge of *unlawful* discrimination and subsequent investigation, proceeding or hearing instituted until Ganheart filed an EEOC charge on August 20, 2006.

To satisfy the "opposition clause," plaintiff need not prove that Xavier's practices were actually unlawful; however, plaintiff must show that she had "'a reasonable belief that the employer was engaged in unlawful employment practices.'"[80]   Simply stated, a showing of a subjective good faith belief is insufficient.[81]

The summary judgment record is devoid of any proof that Ganheart lodged a formal complaint of *unlawful* retaliation or *unlawful* discrimination based of *race, color, sex*, or *religion* prior to filing her EEOC complaint on August 30, 2006.   With respect to retaliation, proof of causation is absent.

The Court recognizes that plaintiff's burden at the *prima facie* stage is not onerous; however, she must produce at least some evidence that the decision maker had knowledge of her *protected* activity.[82]   As the Fifth Circuit held in *Manning*:  "If the decisionmakers were

---

[79]42 U.S.C. § 2000e-3(a)(emphasis added).  *See also Byers v. Dallas Morning News, Inc*., 209 F.3d 419, 427-428 (5th Cir. 2000).

[80]*Byers*, 209 F.3d at 428 (*citing Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981).

[81]*Id*.

[82]*Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 883 n. 6 (5th Cir.2003) (*citing Medina v. Ramsey Steel Co., Inc*., 238 F.3d 674, at 684 (5th Cir.2001)).

completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity."[83]

Because plaintiff cannot establish that a causal link existed between her participation in any *protected* activity and any adverse employment decision,  plaintiff's retaliation claim must fail.  Under the circumstances here, involving only EEOC activity post-dating the alleged adverse employment actions/decisions, no reasonable trier of fact could find in favor of the plaintiff.

To properly bring a cause of action for employment discrimination on the basis of race, color, sex or religion or a cause of action for retaliation based on prior protected activity, the alleged victim must first establish a *prima facie* case of discrimination or retaliation.  In this case, plaintiff was not replaced at all; Xavier eliminated plaintiff's position as well as other co-employees' grant funded positions for a legitimate non-discriminatory and non-retaliatory purpose – *i.e.*, the inability to continue funding these positions with College of Pharmacy grant proceeds.

Whether summary judgment is appropriate depends on numerous factors, including "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case that properly may be considered."[84]   Assuming without deciding that the plaintiff has established a *prima facie* case

---

[83]*Id.* at 883, n. 6. *See also Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir.1999); *Reed v. Efficient Networks, Inc.*, 2004 WL 1717369 (N. D. Tex. July 30, 2004)(granting summary judgment on a retaliation claim).

[84]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-19 (2000) (enunciating the standard applicable to judgment as a matter of law); *see also Pratt v. City of Houston*, 247 F.3d 601, 607 n. 3 (5th Cir.2001) (noting that the standard applicable to JMOL and summary judgment are the same).

of discrimination and/or retaliation, plaintiff's *prima facie* case registers on the weakest end of the spectrum.  As explained below, competent summary judgment evidence of pretext and retaliatory motive are completely absent.

In summary, on this record plaintiff cannot carry her ultimate burden of demonstrating that "but for" her protected activity:  (1) her part-time work schedule would have been adjusted to allow her to participate in fringe benefits offered by Xavier University; <u>or</u>  (2) she would have had no allegedly defamatory memoranda placed in her personnel file in December of 2002; <u>or</u> (3) she would not have been notified (as with other employees who occupied COE grant-funded positions) that her employment would be terminated effective June 30, 2005 because said grant funds were not being renewed.

Because summary judgment is warranted dismissing all of the plaintiff's claims (Title VII employment discrimination/retaliation, Equal Pay Act, § 1983, and state law claims), plaintiff's claim for punitive damages necessarily fails.

 Accordingly and for all of the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment seeking dismissal of the plaintiff's case in its entirety is GRANTED.

New Orleans, Louisiana, this <u>31st</u> day of December, 2008.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**